## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| EMERALD COAST UTILITIES AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> ARCHROMA U.S., INC., <br><br> Defendant. | Civil Case No.: |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Emerald Coast Utilities Authority ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendant, Archroma U.S., Inc. ("Defendant") and alleges as follows, based on information and belief and investigation of Counsel:

## SUMMARY OF THE CASE

1.      Plaintiff, Emerald Coast Utilities Authority, files this Complaint as a Protective Action against Defendant, Archroma U.S., Inc., which it has already filed suit for the damages cited herein in the United States District Court for the District of South Carolina, Charleston Division, in Multi-District Litigation No. 2873 pending before the Honorable Judge Richard M. Gergel under the case caption, *Emerald Coast Utilities Authority v. 3M Company (f/k/a Minnesota Mining and Manufacturing Company), et al.*, Civil Case No. 2:18-cv-03488-RMG. Therein, Plaintiff sets forth the same factual and legal allegations set forth herein and Defendant has filed a Motion to Dismiss citing a lack of jurisdiction in the Home Venue of the United States District Court for the Northern District of Florida.[1] Plaintiff files the instant Complaint as a protective

---

[1] Plaintiff identified the United States District Court for the Northern District of Florida pursuant to and in accordance with MDL No. 2873, Case Management Order No. 3, paragraph 27, available at https://www.scd.uscourts.gov/mdl-2873/orders/CMO%203.pdf.

1

measure to preserve its rights against Archroma U.S., Inc. should Defendant prevail in its pending Motion to Dismiss in the United States District Court for the District of South Carolina, Charleston Division.

2.      Plaintiff brings this action against Defendant to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, treatment, removal, disposal, and/or monitoring of the ongoing contamination of its wells, water supplies, water system, groundwater, and water treatment system caused and/or created by Defendant's products, as well as any and all other damages available as a result of the actions and/or inactions of Defendant.

3.      Plaintiff is a local governmental body, corporate and politic, formed by the Florida Legislature to provide certain utility services in and around Escambia County, Florida ("County"), including but not limited to potable water service within the City of Pensacola ("Pensacola") and certain defined areas within the unincorporated portions of the County.

4.      Plaintiff operates 31 wells distributed throughout its service area, all of which pump groundwater from the Sand-and-Gravel Aquifer to supply drinking water to customers throughout Pensacola and certain areas within the County. Combined, Plaintiff pumps more than 11 billion gallons of water annually to more than 180,000 customers – an average of nearly 31 million gallons daily.

5.      Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public, as well as its water sources, water supplies, wells, piping, distribution system, water treatment system, wastewater center, facilities, properties, and lands (collectively, "Plaintiff's Property").

6. Plaintiff's Property has been contaminated with per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA") and the chemical precursors to PFOA.[2]

7. PFOA is a man-made compound that is toxic and persistent in the environment, does not biodegrade, moves readily through soil and groundwater, and poses a significant risk to human health and safety and the environment.

8. At various times from the 1980s through today, Defendant designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products for use in various "PFAS-Containing Products," including but not limited to Teflon, Scotchguard, waterproofing compounds, stainproofing compounds, paper and cloth coatings, waxes, and aqueous film-forming foam ("AFFF").

9. AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is used at sites such as military bases, airports, petroleum refineries, and fire training centers.

10. Upon information and belief, AFFF has been used at Pensacola International Airport, formerly Pensacola Gulf Coast Regional Airport and Pensacola Regional Airport (Hagler Field), in fire training and/or emergency response activities at its facility located at 2430 Airport Boulevard in Pensacola, Florida.

11. Upon information and belief, AFFF has been used at Bronson Field, a former Naval Auxiliary Air Station, in fire training and/or emergency response activities at its facility located on Bronson Road in Pensacola, Florida.

12. Defendant designed, manufactured, formulated, marketed, distributed, and/or sold Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment even when used as directed and intended by Defendant.

---

[2] PFOA and the chemical precursors to PFOA are collectively referred to in this Complaint as "Fluorosurfactant Products."

13.     Upon information and belief, at all times pertinent herein, Defendant's Fluorosurfactant Products have been released, used, stored, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property.  During these activities, Defendant's Fluorosurfactant Products were stored, used, discharged, cleaned up, and/or disposed of as directed and intended by the Defendant, which allowed PFOA and/or its chemical precursors to enter the environment, and migrate through the soil, sediment, surface water, and groundwater, thereby contaminating Plaintiff's Property.

14.     As a result of the use of Defendant's Fluorosurfactant Products for their intended purpose, PFOA and/or its chemical precursors have been detected in Plaintiff's Property.

15.     Plaintiff's Property has been, and continues to be, contaminated by Defendant's Fluorosurfactant Products.

16.     At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendant's Fluorosurfactant Products.

17.     Plaintiff files this lawsuit to recover compensatory and all other damages, including but not limited to the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove PFAS from the drinking water supplied to the public and/or for the costs of securing alternative sources of water as a result of the PFAS contamination, and to ensure that the responsible parties bear such expense, rather than Plaintiff and its ratepayers.

## **PARTIES**

18.     Plaintiff Emerald Coast Utilities Authority is a public water provider, existing under the laws of the State of Florida, with its principal place of business located at 9255 Sturdevant St., Pensacola, Florida 32514.

4

19. Plaintiff supplies potable water to over 180,000 customers throughout Escambia County and Pensacola. The water is obtained from 31 groundwater wells that draw from the Sand-and-Gravel Aquifer.

20. Defendant Archroma U.S., Inc. is a Delaware corporation that conducts and/or avails itself of doing business throughout the United States, including in Florida. Its principal place of business is located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217.

21. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

22. Upon information and belief, Defendant designed, manufactured, formulated, marketed, promoted, distributed, sold, and/or acquired or assumed liabilities for the manufacture and sale of Fluorosurfactant Products used in the manufacture and/or formulation of PFAS-Containing Products, including but not limited to AFFF, that have and continue to contaminate Plaintiff's Property.

23. Any and all references to a Defendant in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendant.

24. When reference is made to any act or omission of the Defendant, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

25. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant, and the amount in damages exceeds the minimal jurisdictional limits of this Court.

5

26.     Venue is proper in the United States District Court for the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant is a resident and citizen and part of the events or omissions giving rise to this action occurred in this judicial district.

27.     Plaintiff asserts that the laws of the State of Florida govern the Plaintiff's claims set forth herein.  Florida is where the contamination/injury occurred and is also the location of Plaintiff's Property.  To the extent the laws of the State of Florida do not apply, Plaintiff hereby asserts that Defendant's actions and/or inactions violated any and all applicable laws relevant to products liability (design defect and failure to warn), negligence, trespass, nuisance, and any other causes of action set forth herein.

## FACTUAL ALLEGATIONS

### A.  THE CONTAMINANT: PFOA

28.     PFOA is a man-made chemical within a class known as perfluoroalkyl acid ("PFAA").  PFAAs are part of the larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent.  PFOA contains eight carbon-fluorine bonds. For this reason, it is sometimes referred to as "C8."

29.     PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain.  PFOA is considered a long-chain PFAA because it contains eight carbon atoms in its chain; short-chain PFAAs have six or less carbon atoms in their chains.

30.     PFOA is highly water soluble, which increases the rate at which it spreads throughout the environment, contaminating soil, groundwater, and surface water.  Its mobility is made more dangerous by its persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[3]

31.     PFOA is readily absorbed in animal and human tissues after oral exposure and accumulates in the serum, kidney, and liver.  It has been found globally in water, soil and air, as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[4]

32.     PFOA is persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[5]

33.     Since it was first produced, information has emerged showing negative health effects caused by exposure to PFOA.

34.     According to the United States Environmental Protection Agency ("EPA"), "…studies indicate that exposure to PFOA over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[6]

35.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOA."[7]

---

[3] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[4] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.

[5] *See* EPA Document Number: 822-R-16-005 (May 2016) at 55.

[6] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[7] *See* "Health Effects Support Document for Perfluorooctanoic Acid (PFOA)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at

36.     EPA has noted that drinking water can be an additional source of PFOA in the body in communities where this chemical has contaminated water supplies. In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [Fluorosurfactant Products] were used for firefighting."[8]

## B. THE PRODUCT: AQUEOUS FILM-FORMING FOAM

37.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

38.     Upon information and belief, AFFF manufactured and/or formulated with Defendant's Fluorosurfactant Products was released, used, stored, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property.

39.     AFFF can be made without PFOA or its precursor chemicals. Fluorine-free and short-chains foams do not release PFOA or its precursor chemicals into the environment.

40.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion.

41.     When used as the Defendant intended and directed, Defendant's Fluorosurfactant Products release PFOA and/or its precursor chemicals into the environment.

42.     Once PFOA is free in the environment, it does not hydrolyze, photolyze or biodegrade under typical environmental conditions, and is extremely persistent in the environment.

---

https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[8] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

8

As a result of its persistence, it is widely distributed throughout soil, sediment, surface water and groundwater.

43.     The use of Defendant's Fluorosurfactant Products as directed and intended by the Defendant allowed PFOA and/or its precursor chemicals to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

44.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Plaintiff's Property.

## C.  DEFENDANT'S KNOWLEDGE OF PFOA HAZARDS

45.     On information and belief, by the early 1980s, Defendant knew, or reasonably should have known, among other things, that: (a) PFOA and/or its precursor chemicals are toxic; and (b) when PFOA and/or its precursor chemicals are used, released, and/or disposed of in the open environment, per the instructions given by the manufacturer, PFOA and/or its precursor chemicals readily migrate through the subsurface, mix easily with surface water and groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

46.     At all times relevant herein, Defendant knew, or reasonably should have known, that PFOA could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA can persist in the body for prolong periods of time.

47.     By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

9

48.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

49.     Notwithstanding this knowledge, Defendant negligently and carelessly: (a) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or its precursor chemicals to contaminate Plaintiff's Property, including Plaintiff's water resources; (c) failed to recall and/or warn the users of Fluorosurfactant Products, negligently designed products containing or degrading into PFOA, of the dangers of surface water, soil, sediment and groundwater contamination as a result of standard use and disposal of these products; and (d) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendant knew or could reasonably ascertain the identities of the purchasers of the Fluorosurfactant Products.

50.     As a direct result of Defendant's actions and/or inactions alleged in this Complaint, Plaintiff's Property has been and will continue to be contaminated with PFOA, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff must assess, evaluate, investigate, monitor, treat, remove, clean up, correct, and/or remediate PFOA contamination on its Property at significant expense, loss and damage.

51.     Defendant had a duty and breached its duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental

---

[9]   *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

impacts before they sold such products. Defendant also had a duty and breached its duty to minimize the environmental harms caused by Fluorosurfactant Products.

### D. THE IMPACT OF PFOA ON PLAINTIFF'S PROPERTY

52.     PFAS have been detected in water extracted from Plaintiff's Property. PFOA has been detected and/or is present in certain of areas of Plaintiff's Property. It is the contention of Plaintiff that any detectible level of PFOA in its Property requires investigation, treatment, remediation and/or monitoring.

53.     The detection and/or presence of PFOA, and the threat of further detection and/or presence of PFOA, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

54.     On information and belief, the invasion of Plaintiff's Property with PFOA is recurring, resulting in new harm to Plaintiff on each occasion.

55.     The injuries to Plaintiff caused by Defendant's conduct constitute an unreasonable interference with, and damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination condition, in addition to the other damages sought herein.

56.     As a direct result of Defendant's conduct, Plaintiff has had to address PFAS contamination of many of its groundwater wells. In doing so, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of its Property by PFOA and/or its precursor chemicals, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, punitive damages, attorneys' fees, and all other equitable and applicable damages.

## **FIRST CAUSE OF ACTION**

### STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT

57.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

58.     Defendant was engaged in the business of researching, designing, manufacturing, testing, distributing, marketing and selling Fluorosurfactant Products.

59.     Defendant designed, formulated, refined, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products for use in PFAS-Containing Products, including AFFF.

60.     Defendant represented, asserted, claimed and warranted that its Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

61.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant owed a duty to all persons whom Defendant's Fluorosurfactant Products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

62.     Defendant knew, or reasonably should have known, that the use of its Fluorosurfactant Products in their intended manner would result in the discharge, release, and/or disposal of PFOA and/or its precursor chemicals into the environment, where they would migrate below the surface and into the groundwater.

63.     Defendant's Fluorosurfactant Products were defective in design and unreasonably dangerous because, among other things:

      a.  PFAS, including PFOA, cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

      b.  even at extremely low levels, PFAS, including PFOA, render drinking water unfit for consumption;

12

    c.  PFAS, including PFOA, pose significant threats to public health; and

    d.  PFAS, including PFOA, create real and potential environmental damage.

64.    Defendant knew of these risks associated with PFAS, including PFOA, and failed to use reasonable care in the design of its Fluorosurfactant Products.

65.    Defendant's Fluorosurfactant Products pose greater danger to the environment than would be expected by ordinary persons such as the Plaintiff and the general public.

66.    At all times, Defendant was capable of making Fluorosurfactant Products that did not contain PFOA and/or its chemical precursors. Reasonable alternative designs existed which were capable of preventing Plaintiff's damage.

67.    As a direct and proximate result of Defendant's unreasonably dangerous design, manufacture, and sale of Fluorosurfactant Products, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

68.    Defendant knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendant committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

69.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

70.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant had a duty to provide adequate warnings of the

risks of these Products to all persons whom its Fluorosurfactant Products might foreseeably harm, including Plaintiff, the public, and public officials.

71.     Defendant knew that its Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA pose to human health and the environment.

72.     Defendant knew of the health and property damage risks associated with its Fluorosurfactant Products, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with its Fluorosurfactant Products or an instruction that would have allowed Plaintiff to avoid the damage to its Property.

73.     The Fluorosurfactant Products purchased or otherwise acquired from Defendant were used, discharged, released, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property.

74.     Defendant's Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial change in the condition of the products.

75.     Defendant's Fluorosurfactant Products used at, near, and/or in the vicinity of Plaintiff's Property were defective in design and unreasonably dangerous products for the reasons set forth above.

76.     Despite Defendant's knowledge of the environmental and human health hazards associated with the use and/or disposal of Fluorosurfactant Products in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or its precursor chemicals, Defendant failed to issue any warnings, instructions, recalls, or advice regarding its Fluorosurfactant Products to Plaintiff, governmental agencies, or the public.

77.     In particular, Defendant failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of its Fluorosurfactant Products or otherwise.

14

78.     As a direct and proximate result of Defendant's failure to warn, PFOA and/or its precursor chemicals at all times relevant to this litigation have:

     a.   posed and continue to pose a threat to Plaintiff's Property;

     b.   required and/or will require additional testing and monitoring of Plaintiff's Property for PFAS contamination;

     c.   contaminated, continue to contaminate, and/or will contaminate Plaintiff's Property and groundwater in the vicinity of Plaintiff's Property; and

     d.   will require remediation of PFAS contamination PFAS groundwater contamination or, where remediation is impracticable or insufficient for Plaintiff, installation of a system to filter out PFAS or procurement of water from alternative sources.

79.     As a direct and proximate result of Defendant's failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

80.     Defendant knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendant committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## **THIRD CAUSE OF ACTION**

### PUBLIC NUISANCE

81.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

82.     Defendant manufactured, distributed, marketed, promoted, and/or sold Fluorosurfactant Products in a manner that created or participated in creating a public nuisance

that unreasonably endangers or injures the property, health, safety and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

83.     Defendant, by its negligent, reckless and willful acts and omissions set forth above have, among other things, knowingly unleashed massive, long-lasting and still spreading contamination of groundwater and drinking water wells, thereby causing PFAS contamination of groundwater and contamination and threat of contamination of Plaintiff's Property.

84.     Actual and threatened PFAS contamination caused by Defendant's conduct has caused and continues to cause injury to Plaintiff in the form of present serious interference with the use, benefit and/or enjoyment of its Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

85.     Defendant's conduct has also injured and continues to injure the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Escambia County, Florida.

86.     PFAS contamination, both real and immediate, constitute current as well as prospective public nuisances.

87.     Defendant knew or in the exercise of reasonable care should have known that the use and introduction of PFOA and/or its precursor chemicals into the environment would and has unreasonably and seriously endangered, injured and interfered with the ordinary comfort, use and enjoyment of vital groundwater resources relied upon by Plaintiff.

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

88.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

89.     The groundwater system, including the zone of influence in the groundwater that supplies Plaintiff's wells, has been contaminated by PFOA and/or its precursor chemicals as a

16

direct and proximate result of the intentional and unreasonable, negligent and reckless conduct of Defendant.

90.      PFAS contamination caused by Defendant's conduct has damaged Plaintiff's Property and business and unreasonably interfered with the use, benefit and enjoyment of Plaintiff's Property.

## **FIFTH CAUSE OF ACTION**

### TRESPASS

91.      Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

92.      Plaintiff is the owner and operator of a public water supply system and other relevant structures associated therewith.

93.      Defendant manufactured, distributed, marketed, promoted, and/or sold Fluorosurfactant Products with the actual knowledge and/or substantial certainty that Fluorosurfactant Products would, through normal use, release PFOA and/or its chemical precursors, which would migrate into subterranean groundwater, causing contamination.

94.      Defendant knew, or in the exercise of reasonable care should have known, that PFOA contaminates water resources, including water resources utilized by and property of public water providers, such as Plaintiff.

95.      Defendant negligently, recklessly, and/or intentionally produced, marketed, and sold Fluorosurfactant Products in a manner that caused PFOA to contaminate Plaintiff's Property.

96.      The contamination of Plaintiff's Property has varied over time and has not yet ceased. PFOA continues to migrate into and enter Plaintiff's Property. The contamination is reasonably abatable.

97.      Plaintiff has not consented to, and does not consent to, this contamination.

17

98.     As a direct and proximate result of Defendant's trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

99.     Defendant knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendant committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

100.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

101.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of Fluorosurfactant Products, Defendant owed a duty to Plaintiff, as well as to all persons whom Defendant's Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendant's Fluorosurfactant Products.

102.     Defendant knew or should have known that PFOA and/or its chemical precursors were leaching from PFAS-containing products and/or AFFF when used in their foreseen and intended manner.

103.     Despite the fact that Defendant knew that PFOA and/or its chemical precursors are toxic, can contaminate water resources, and are possible carcinogens, Defendant negligently:

> a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products;

b. issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or its chemical precursors to contaminate Plaintiff's Property, including its groundwater supply;

c. failed to recall and/or warn the users of Fluorosurfactant Products of the dangers of groundwater contamination as a result of standard use and disposal of Fluorosurfactant Products; and

d. failed and refused to issue the appropriate warning and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendant knew the identity of the purchasers of its Fluorosurfactant Products.

104. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

105. Defendant knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendant committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE *PER SE*

106. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

107. Plaintiff alleges that Defendant negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled and/or sold Fluorosurfactant Products and/or negligently, carelessly and recklessly recommended application and disposal techniques for products containing its Fluorosurfactant Products that Defendant directly and

19

proximately caused contamination of Plaintiff's Property in violation of Florida Statute § 403.161(1) (public health), which sets a standard of care or conduct to protect Plaintiff and all persons or property within its jurisdiction, as well as the environment, from the type of improper activities engaged in by Defendant.

## EIGHTH CAUSE OF ACTION

### CIVIL CONSPIRACY

108.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

109.     At all times relevant to this lawsuit, Defendant actually knew of the hazards which PFAS posed to groundwater throughout Florida, including Plaintiff's water system.

110.     Beginning in the 1990s and continuing through the date of the filing of this Complaint, Defendant agreed to engage in unlawful and wrongful acts that caused damage to Plaintiff. Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendant colluded for the avowed purpose of providing information about Fluorosurfactant Products to the public and to government agencies, with the true, unlawful purpose of:

    a.  intentionally misrepresenting to the EPA and the public that Fluorosurfactant Products were safe and did not pose a risk to groundwater;

    b.  concealing the dangers of Fluorosurfactant Products (including their characteristics and the propensity of Fluorosurfactant Products to contaminate groundwater) from the government and the public by, among other means, repeatedly misrepresenting how PFAS-containing products were being disposed;

    c.  concealing dangers of Fluorosurfactant Products from consumers and the public; and

    d.  using its considerable resources to fight PFAS legislation.

111. As a direct and proximate result of Defendant's conspiracy, Defendant's Fluorosurfactant Products at all times relevant to this litigation have:

    a. posed and continue to pose a threat to Plaintiff's Property;

    b. contaminated and/or will contaminate Plaintiff's Property and/or groundwater in the vicinity of Plaintiff's Property;

    c. required and/or will require testing and monitoring of Plaintiff's Property for PFAS contamination;

    d. required or will require remediation of PFAS contamination or, where remediation is impracticable or insufficient for Plaintiff, installation of a system to filter out PFAS or procurement of water from alternative sources;

    e. diminished Plaintiff's and Plaintiff's consumers' confidence in, and the use and enjoyment of, Plaintiff's water and property;

    f. diminished Plaintiff's Property value due to actual, impending, or threatened contamination; and

    g. caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of its Property and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant as follows:

1. Compensatory damages according to proof including, but not limited to:

    a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination of Plaintiff's Property;

    b. costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property;

21

c.  costs and expenses associated with and related to the filtration, removal and disposal of the contamination; and

d.  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2. Diminution of property value;

3. Punitive damages;

4. Consequential damages;

5. Costs, disbursements, and attorneys' fees of this lawsuit;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Dated: May 17, 2021                                    Respectfully submitted,

J. Harold Seagle
**SEAGLE LAW, PLLC**
P.O. Box 15307
Asheville, N.C. 28813
Telephone: 828-774-5711
haroldseagle@charter.net

Scott Summy (TX Bar No. 19507500)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181

*Attorneys for Plaintiff*

22